UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------- x

SIXTO RODRIGUEZ, FRANCISCO ASUNCION     :
ANDRADE, RODRIGO GRIJALVA ASCENCION,     :
SANTOS BAUTISTA, JACQUELIN CABRERA     :
ROMERO, and WILSON FLORES, individually and on     :
behalf of all others similarly situated,     :
    :
    :    REPORT &
                     Plaintiffs,     :    RECOMMENDATION
    :    16-CV-3922 (CBA) (SMG)
      -against-     :
    :
SOLARES CORP. (d/b/a/ RANCHO MOFONGO), and     :
DOMINGO MORONTA,     :
    :
                   Defendants.     :

-------------------------------------------------------------------- x

GOLD, STEVEN M., U.S. Magistrate Judge:

## INTRODUCTION

      Plaintiffs bring this action seeking unpaid wages, overtime, spread-of-hourspay,

liquidated damages, statutory damages, and reimbursement for "tools of the trade," pursuant to

the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL").  Complaint

("Compl."), Docket Entry 1.

      Plaintiffs are former employees of defendants Solares Corp. (d/b/a Rancho Mofongo)

("Solares") and Domingo Moronta ("Moronta," and together with Solares, "defendants").

Compl. ¶¶ 16-21.  Solares is a New York corporation with its principal place of business in

Corona, New York.  *Id.* ¶ 23.  Moronta is an individual and an owner of Solares.  *Id.* ¶ 28.

During all times relevant to this action, defendants owned, operated, and controlled a Dominican

restaurant named Rancho Mofongo in Corona, New York, where defendants employed plaintiffs

in various capacities.  *Id.* ¶¶ 3, 22, 27.

Although defendants answered, they subsequently failed to adequately defend, resulting in the Clerk's entry of default pursuant to Fed. R. Civ. P. 55(a).  *See* Clerk's Entry of Default dated February 16, 2018.  Plaintiffs then moved for default judgment, Docket Entry 25, and Senior United States District Judge Carol B. Amon referred plaintiffs' motion to me for a Report and Recommendation.  For the following reasons, I respectfully recommend that the Court grant plaintiffs' motion for default judgment, and award damages, interest, attorney's fees, and costs as set forth below.

**FACTUAL BACKGROUND**

## I.     Duties and Circumstances Specific to Each Plaintiff

In support of their motion, plaintiffs have submitted sworn declarations which detail their recollections of the hours they worked and the pay they received.[1]  The specific allegations relating to each plaintiff are detailed below.

### A.   Sixto Rodriguez

Sixto Rodriguez ("Rodriguez") was employed by defendants from February 2015 to April 2016 as a general assistant.  Compl. ¶¶ 39-40; Rodriguez Decl. ¶¶ 8-9.  Throughout his employment, Rodriguez worked from 11:00 a.m. to 1:00 a.m. on Mondays, Tuesdays, and Wednesdays, and from 10:00 a.m. to 5:00 a.m. on Thursdays, Fridays, Saturdays, and Sundays, for a total of 118 hours per week.  Compl. ¶ 44; Rodriguez Decl. ¶ 13.  From February 2015 to March 31, 2015 and from January 2016 to April 2016, Rodriguez was paid a fixed salary of $800 per week.  Compl. ¶ 48; Rodriguez Decl. ¶ 17.  From April 1, 2015 to January 15, 2016,

---

[1] *See* Declaration of Sixto Rodriguez ("Rodriguez Decl."), Docket Entry 27-4; Declaration of Francisco Asuncion Andrade ("Asuncion Decl."), Docket Entry 27-5; Declaration of Rodrigo Grijalva Ascension ("Grijalva Decl."), Docket Entry 27-6; Declaration of Santos Bautista ("Bautista Decl."), Docket Entry 27-7; Declaration of Jaquelin Cabrera Romero ("Cabrera Decl."), Docket Entry 27-8; Declaration of Wilson Flores ("Flores Decl."), Docket Entry 27-9.

Rodriguez was not paid anything for his work.  Compl. ¶ 46; Rodriguez Decl. ¶ 15.  Defendants also required Rodriguez to purchase items for the business with his own funds, which caused him to incur $8,301.53 of unreimbursed expenses.  Compl. ¶ 57; Rodriguez Decl. ¶ 26 and attached invoices.

### B.  Francisco Asuncion Andrade

Francisco Asuncion Andrade ("Asuncion") was employed by defendants from October 2015 to April 2016 as a bartender and bar-back.  Compl. ¶¶ 58-59; Asuncion Decl. ¶¶ 8-9.  From October 2015 to March 2016, Asuncion worked from 7:00 p.m. to 6:00 a.m. Thursdays through Sundays, for a total of 44 hours per week, and from March 2016 to April 2016, he worked from 7:00 p.m. to 6:00 a.m. on Fridays and Saturdays, for a total of 22 hours per week.  Compl. ¶¶ 64-65; Asuncion Decl. ¶¶ 13-14.  Defendants paid Asuncion a fixed salary of $30 per day throughout his employment.  Compl. ¶ 67; Asuncion Decl. ¶ 16.

### C.  Santos Bautista

Santos Bautista ("Bautista") was employed by defendants from January 2015 to August 2015 as a cook.  Compl. ¶¶ 75-76; Bautista Decl. ¶¶ 8-9.  Throughout his employment, Bautista worked from 10:00 a.m. to 1:00 a.m. or 1:30 a.m. Mondays through Fridays, and from 10:00 a.m. to 2:00 a.m. or 2:30 a.m. Saturdays and Sundays, for a total of 107 to 110.5 hours per week.  Compl. ¶ 79; Bautista Decl. ¶ 13. Until the last three weeks of his employment, defendants paid Bautista a fixed salary of $500 per week.  Compl. ¶ 82; Bautista Decl. ¶ 15.  Defendants did not pay Bautista for his last three weeks of employment.  Compl. ¶ 83; Bautista Decl. ¶ 16.

### D.  Rodrigo Grijalva Ascencion

Rodrigo Grijalva Ascencion ("Grijalva") was employed by defendants from December 2015 to April 2016 as a porter and maintenance person.  Compl. ¶¶ 88-89; Grijalva Decl. ¶¶ 8-9.

Throughout his employment, Grijalva worked from 7:00 p.m. to 5:00 a.m. on Fridays, Saturdays, and every other Sunday, and from 10:00 a.m. to 3:00 p.m. on five Mondays, for a total of 30 to 35 hours per week.  Compl. ¶ 92; Grijalva Decl. ¶ 12.  Defendants paid Grijalva a fixed salary of $30 per day throughout his employment.  Compl. ¶ 94; Grijalva Decl. ¶ 14.  However, defendants did not pay Grijalva for three days of work.[2]  Grijalva Decl. ¶ 15.

### E.  Jaquelin Cabrera Romero

Jaquelin Cabrera Romero ("Cabrera") was employed by defendants from September 1, 2015 to November 28, 2015 as a bartender and bar-back.  Compl. ¶¶ 101-02; Cabrera Decl. ¶¶ 8-9.  Throughout her employment, Cabrera worked from 2:00 p.m. to 4:00 a.m. Tuesdays through Sundays, for a total of 84 hours per week.  Compl. ¶ 107; Cabrera Decl. ¶ 13.  Defendants paid Cabrera a fixed salary of $30 per day throughout her employment.  Compl. ¶ 109; Cabrera Decl. ¶ 15.  However, defendants did not pay Cabrera for her last week of work.  Cabrera Decl. ¶ 19.

### F.  Wilson Flores

Wilson Flores ("Flores") was employed by defendants from August 2015 to May 2016 as a delivery worker.  Compl. ¶¶ 118-19; Flores Decl. ¶¶ 8-9.  Throughout his employment, Flores worked from 11:00 a.m. to 1:00 a.m. Sundays through Fridays, and 11:00 a.m. to 2:00 a.m. on Saturdays.  Compl. ¶ 124; Flores Decl. ¶ 13.  Defendants also required Flores to work from 11:00 a.m. to 5:00 a.m. on at least seven occasions.  Compl. ¶ 124; Flores Decl. ¶ 13.  Flores

---

[2] Grijalva and Cabrera both allege that defendants entirely failed to pay them for a portion of their work.  However, these allegations are included only in their declarations, and not in the original Complaint.  Nonetheless, such recollections provide sufficient bases for the calculation of damages where defendants fail to provide records of pay received.  *See Doo Nam Yang v. ACBL Corp.*, 427 F. Supp. 2d 327, 336-37 (S.D.N.Y. 2005).  Accordingly, I have calculated damages based on these recollections.  In doing so, I note that the resulting difference is minimal.  Moreover, the allegations do not add a new theory of liability, but instead serve only to clarify the damages alleged generally in the Complaint, in which plaintiffs stated that they "were damaged . . . in an amount to be determined at trial" with regard to unpaid wages and overtime compensation.  Compl. ¶¶ 171, 175.

therefore typically worked 99 to 103 hours per week.  Defendants paid Flores a fixed salary of $400 per week throughout his employment.  Compl. ¶ 127; Flores Decl. ¶ 16.

## II.  Tip Crediting

Asuncion and Cabrera were ostensibly employed as bartenders and bar-backs, while Flores was ostensibly employed as a delivery worker.  Compl. ¶¶ 140-41.  Defendants therefore classified Asuncion, Cabrera, and Flores (collectively "the tipped employees") as tipped employees.  *Id.* ¶ 145.  "However, [the tipped employees] were required to spend over 20% of their work time performing" various non-tipped duties.  *Id.* ¶ 37.  These non-tipped duties included:

> cooking, dishwashing, acting as DJ's, purchasing missing items at the supermarket, promoting the restaurant by passing out menus to potential customers in the street, cleaning the bathrooms, windows and the floor, acting as waiters and waitresses, organizing and setting up tables and chairs, bringing up items from the basement, taking out the garbage, sweeping and mopping and stocking liquor in the bar (hereinafter, 'non-tipped duties').

*Id.* ¶ 3.

Plaintiffs allege that these "duties were not incidental to their occupation as bartenders, bar backs, and delivery workers, but instead constituted entirely unrelated occupations."  *Id.* ¶ 144.  In addition, "[w]hile performing these duties, these Plaintiffs did not receive tips."  *Id.* Defendants reduced the tipped employees' hourly wage by a tip allowance, but never informed the tipped employees that they had done so.  *Id.* ¶ 150.  Moreover, defendants failed to keep a record of tips earned.  *Id.* ¶ 151.

### DISCUSSION

## I.  Liability

A defendant's default is deemed an admission of all of the well-pleaded allegations in the complaint pertaining to liability.  *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*,

5

973 F.2d 155, 158 (2d Cir. 1992), *cert. denied*, 506 U.S. 1080 (1993); *Montcalm Pub. Corp. v. Ryan*, 807 F. Supp. 975, 977 (S.D.N.Y. 1992). "Nevertheless, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." *Labarbera v. ASTC Labs., Inc.*, 752 F. Supp. 2d 263, 270 (E.D.N.Y. 2010) (internal quotation marks omitted); *see also Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981). For the reasons set forth below, I conclude that plaintiffs assert valid claims for violations of federal and state wage and hour laws.

### A. Threshold Requirements

I first turn to whether plaintiffs' employment with defendants is covered by the FLSA and NYLL. The FLSA provides that

> [e]very employer shall pay to each of his employees . . . who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce . . . [wages] not less than the minimum wage rate in effect under subsection (a)(1) of this section. 29 U.S.C. § 206(b). An enterprise is engaged in commerce where, in relevant part, it "has employees . . . handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce" and where its "annual gross volume of sales made or business done is not less than $500,000." *Id.* § 203(s)(1)(A). Commerce is, in turn, defined as "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof." *Id.* § 203(b).

*Mejia v. E. Manor USA Inc.*, 2013 WL 3023505, at *2 (E.D.N.Y. Apr. 19, 2013) (omissions in original), *report and recommendation adopted*, 2013 WL 2152176 (E.D.N.Y. May 17, 2013).

Thus, a plaintiff in an FLSA action must establish: (1) that an employer-employee relationship exists, and (2) that the employer is engaged in interstate commerce, with not less than $500,000 in gross annual sales. *See* 29 U.S.C. § 206(b). While plaintiffs must also prove an employer-employee relationship to recover under the NYLL, the NYLL "does not require a plaintiff to show either a nexus with interstate commerce or that the employer has any minimum

amount of sales." *Ethelbert v. Choice Sec. Co.*, 91 F. Supp. 3d 339, 359 (E.D.N.Y. 2015) (internal quotation marks and citations omitted).

    i. <u>Employer-Employee Relationship</u>

   The FLSA defines an "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee," and a "person" as, among other things, either an individual or a corporation. 29 U.S.C. §§ 203(a), 203(d). The definition of an employer under New York Labor Law is "similarly expansive." *Yang*, 427 F. Supp. 2d at 342 (citing, *inter alia*, N.Y. Lab. Law § 651(6)). "Courts have interpreted the definition of 'employer' under the [NYLL] coextensively with the definition used by the FLSA." *Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 37 (E.D.N.Y. 2015) (internal citations and quotation marks omitted).

   Following the Supreme Court's mandate in *Goldberg v. Whitaker House Coop.*, 366 U.S. 28, 33 (1961) that courts look to the "economic reality" of a situation to determine who qualifies as an employer, the Second Circuit has identified the following factors as relevant: "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Herman v. RSR Sec. Servs.*, 172 F.3d 132, 139 (2d Cir. 1999) (internal citations and quotation marks omitted). The NYLL employs the same economic realities test. *Slamna v. API Restaurant Corp.*, 2012 WL 2979067, at *3 (S.D.N.Y. July 20, 2012); *Yang*, 427 F. Supp. 2d at 342 n.25.

   Plaintiffs allege, referring to both defendants Solares and Moronta, that "[a]t all relevant times, Defendants were Plaintiffs' employers within the meaning of the FLSA and New York Labor Law. Defendants had the power to hire and fire Plaintiffs, control the terms and

conditions of employment, and determine the rate and method of compensation in exchange for their services."  Compl. ¶ 34.  As in *Herman*, plaintiffs allege that the defendants did not maintain employment records.  *Herman*, 172 F.3d at 140; *see, e.g.*, Compl. ¶ 155.  However, "[n]o one of the four factors standing alone is dispositive.  Instead, the 'economic reality' test encompasses the totality of the circumstances, no one of which is exclusive."  *Herman*, 172 F.3d at 139.  As the other factors are clearly satisfied, I conclude that both defendants meet the definition of an employer under both federal and state law, and are properly held jointly and severally liable for any judgment entered in this case.  *See Man Wei Shiu v. New Peking Taste Inc.*, 2014 WL 652355, at *9 (E.D.N.Y. Feb. 19, 2014).

ii.   Interstate Commerce with Not Less Than $500,000 in Sales

To recover under the FLSA, a plaintiff must also allege either that he is personally engaged in interstate commerce or that he is employed by an enterprise engaged in interstate commerce.  *Shim v. Millennium Grp.*, 2009 WL 211367, at *2 (E.D.N.Y. Jan. 28, 2009).  The NYLL has no such requirement.  *Ethelbert*, 91 F. Supp. 3d at 359.

> Under the FLSA, an enterprise engaged in commerce is defined as an enterprise that has employees engaged in interstate commerce or in the production of goods for interstate commerce, *or that has employees handling,* selling, or otherwise working on goods or materials that have been moved in or produced for interstate commerce, and whose annual gross volume of sales made or business done is not less than $500,000.

*Shim*, 2009 WL 211367 at *2 (internal brackets and quotation marks omitted) (quoting 29 U.S.C. § 203(s)(1)(A)).

Plaintiffs allege that defendants were engaged in interstate commerce and conducted transactions totaling not less than $500,000 annually.  Compl. ¶¶ 35-36.  Specifically, plaintiff alleges that "numerous items that were used and sold daily at Rancho Mofongo, such as meats, spices, and beverages, were produced outside the state of New York," and that "[i]n each year

from 2015 to 2016, Defendants, both separately and jointly, had a gross annual volume of sales of not less than $500,000." *Id.* Plaintiffs have thus adequately pleaded the interstate commerce and sales volume elements of an FLSA claim.

### iii. Exemptions to Overtime Compensation

"The FLSA exempts from [the] overtime requirement 'any employee employed in a bona fide . . . professional capacity.'" *Howard v. Port Authority of N.Y. & N.J.*, 684 F. Supp. 2d 409, 412 (S.D.N.Y. 2010) (quoting 29 U.S.C. § 213(a)(1)). The exemptions "do not apply to manual laborers." 29 C.F.R. § 541.3(a). The FLSA's "exemptions are construed narrowly, and 'the burden rests on the employer to prove that a particular employee is exempt from the Act's requirements.'" *Howard*, 684 F. Supp. 2d at 412 (quoting *Havey v. Homebound Mortg., Inc.*, 547 F.3d 158, 163 (2d Cir. 2008)); *see also Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 160 (E.D.N.Y. 2014); *Sethi v. Narod*, 974 F. Supp. 2d 162, 178 (E.D.N.Y. 2013).

Plaintiffs assert that they were hired as manual workers and performed a variety of low-level tasks, which "required neither discretion nor independent judgment." Compl. ¶¶ 42, 62, 78, 91, 105, 122. Moreover, defendants, having defaulted, have not met their burden of proving that plaintiffs were exempt. Accordingly, Plaintiffs' allegations establish that they were not exempt workers as defined by either the NYLL or the FLSA.

## II. Damages

Having concluded that plaintiffs have established the threshold requirements of the FLSA and NYLL, I now turn to the substance of plaintiffs' claims and the determination of damages.

### A. Wages and Overtime

Plaintiffs prevailing on a claim brought under the FLSA are entitled to recover "in the amount of their unpaid minimum wages, or their unpaid overtime compensation." 29 U.S.C.

§ 216(b).  New York Labor Law similarly allows for the recovery of "the full amount of any

such underpayments."  N.Y. Lab. Law §§ 198, 663(1).  Both federal and state statutes require

that employees be paid one and one-half times their regular rate for overtime, defined as time

worked above forty hours per week.  29 U.S.C. § 207(a)(1); 12 N.Y.C.R.R. § 142-2.2

(mandating an overtime wage calculated, in relevant part, in the same manner as under the

FLSA).

The federal minimum wage at all times relevant to this litigation was $7.25 per hour.  29

U.S.C. § 206(a)(1)(C).  The New York minimum wage was $8.75 per hour from December 31,

2014 through December 30, 2015, and $9.00 per hour from December 31, 2015 through

December 30, 2016.  N.Y. Lab. Law § 652.

Plaintiffs have properly alleged that they were not paid the wages and overtime

compensation to which they are entitled.  Plaintiffs have pled in their complaint—and sworn to

in affidavits—the dates and hours they worked and the amounts they were paid.  Accordingly,

plaintiffs have a right to recover under the FLSA and NYLL for unpaid regular and overtime

wages.

I have reviewed plaintiffs' sworn declarations, which detail their recollections of hours

worked and pay received.  Docket Entries 27-4 to -9.  While a "plaintiff must produce

'sufficient evidence' to show the hours he [or she] worked . . . it is possible for plaintiff to meet

this burden by relying on his recollection alone."  *Yang*, 427 F. Supp. 2d at 335.  Moreover,

"[t]here is a rebuttable presumption that a weekly salary covers 40 hours."  *Giles v. City of New

York*, 41 F. Supp. 2d 308, 317 (S.D.N.Y. 1999); *see also Berrios v. Nicholas Zito Racing Stable,

Inc.*, 849 F. Supp. 2d 372, 385 (E.D.N.Y. 2012).

In light of defendants' default, plaintiffs' recollections are deemed admitted, and the presumption that any salary paid was meant to cover a forty-hour work week stands unrebutted. Accordingly, the wages due plaintiffs are calculated based upon the number of hours plaintiffs recall working.  The regular hourly wage rate plaintiffs are entitled to be paid is determined by taking the amount plaintiffs contend they were paid each week and dividing that weekly amount by forty hours, except where the resulting hourly rate is below the statutory minimum wage, in which case the minimum wage is used.  Overtime hourly wage rates are determined by multiplying the regular hourly wage, or minimum wage where applicable, by 150 percent.  Once the total amount owed in wages is determined, the amount plaintiffs were actually paid is subtracted, leaving a net amount of regular and overtime wages due.

The underlying calculations used to determine the wages due plaintiffs are set forth in Appendix A to this Report and Recommendation.  As demonstrated there in more detail, using regular and overtime hourly wage rates determined as indicated above, and multiplying those rates by the regular and overtime hours plaintiffs recall having worked,[3] and subtracting the wages plaintiffs were in fact paid, I calculate that plaintiffs are due the following amounts in unpaid regular and overtime wages:

| Plaintiff | Unpaid Regular Wages Due | Unpaid Overtime Wages Due | Total Unpaid Regular & Overtime Wages Due |
|---|---|---|---|
| Rodriguez | $14,420.00 | $96,667.07 | **$111,087.07** |
| Asuncion | $6,838.57 | $1,137.64 | **$7,976.21** |
| Bautista | $1,050.00 | $43,251.86 | **$44,301.86** |
| Grijalva | $4,352.68 | N/A | **$4,352.68** |
| Cabrera | $2,292.86 | $7,177.50 | **$9,470.36** |
| Flores | N/A | $39,606.43 | **$39,606.43** |

---

[3] Where a plaintiff recalls a range of weekly hours worked, the number of hours worked is calculated based upon the midpoint.  For example, plaintiff Grijalva recalls working 30 to 35 hours per week, and his unpaid wages are therefore calculated based upon his having worked 32.5 hours per week.

B. *Tip Crediting*

Those plaintiffs who were tipped employees allege that defendants reduced their hourly

wage by a tip allowance, but never informed the tipped employees that they had done so.

Compl. ¶ 150.  "Under the FLSA and the NYLL, employers in some circumstances may apply a

tip credit against the full minimum wage that would otherwise be owed to an employee, such as a

waiter, who regularly receives tips."  *Fermin*, 93 F. Supp. 3d at 38 (citing 29 U.S.C. § 203(m)).

However, under the FLSA, tipped employees who spend more than twenty percent of their

working time performing non-tipped duties "must be paid the full minimum wage for the time

spent performing the non-tipped work."  *Salinas v. Starjem Rest. Corp.*, 123 F. Supp. 3d 442,

470 (S.D.N.Y. 2015).  "New York law goes even further.  Indeed, if a tipped employee performs

non-tipped work '(a) for two hours or more, or (b) for more than 20 percent of his or her shift,

whichever is less, the wages of the employee shall be subject to no tip credit *for that day.*'"  *Id.*

at 470-71 (quoting 12 N.Y.C.R.R. § 146–2.9).  "Additionally, under both the FLSA and the

[NYLL], an employer is not eligible for the tip credit unless it provides the employee with notice

of the employer's intent to utilize the tip credit."  *Fermin*, 93 F. Supp. 3d at 39 (E.D.N.Y. 2015)

(citing 29 U.S.C. § 203(m); 12 N.Y.C.R.R. § 146–2.2(a)).

Defendants are not entitled to a tip credit in this case for two reasons.  First, while the

twenty percent rule might not preclude defendants from claiming tip credits for the time

plaintiffs spent doing tipped work under the FLSA, defendants could not claim tip credits at all

under NYLL, because the tipped employees spent more than twenty percent of each workday

performing non-tipped duties.  Compl. ¶ 142.  Second, under both the FLSA and NYLL,

defendants are ineligible for application of tip credits because they failed to provide plaintiffs

with notice of their intent to use the credits.  *See id.* ¶ 150.  Accordingly, defendants' liability

12

should not be reduced by crediting any tips earned by those plaintiffs who were tipped employees.

### C.  Spread-of-Hours Pay

Plaintiffs also bring spread-of-hours claims against defendants under the NYLL.  "The NYLL spread-of-hours claim, for which there is no counterpart under the FLSA, provides that an employee is entitled to recover compensation for an extra hour of work at the minimum wage for each day that the employee works in excess of ten hours."  *Fermin*, 93 F. Supp. 3d at 45. However, employees who earn more than the statutory minimum wage are not entitled to spread-of-hours pay.  *See Guadalupe v. Tri-State Emp't, Mgmt. & Consulting, Inc.*, 2013 WL 4547242, at *12-13 (E.D.N.Y. Aug. 28, 2013).

> [I]f an employee's total weekly compensation is equal to or greater than the total minimum wages due the employee for that workweek, including compensation for an additional hour for each day in which the 'spread of hours' exceeds ten [ ], no additional payments are due the employee because the employee earns sufficiently more than the statutory minimum wage.

*Id.* at *12 (quoting New York State Department of Labor opinion letter).  Although I recommend that some plaintiffs be awarded damages that reflect wages higher than the statutory minimum, these recommended awards reflect the amount that *should have been paid* to the employees, rather than the amounts they *actually* were paid.  This distinction is crucial, because the proper amounts to use in determining whether an employee is entitled to spread-of-hours pay are "the weekly wages *actually paid* to an employee."  *Yang*, 427 F. Supp. 2d at 339 (emphasis added). A comparison of the actual amounts paid with the minimum wages due shows that each plaintiff seeking spread-of-hours pay—that is, every plaintiff other than Grijalva—meets the prerequisite of having been paid less than the statutory minimum wages owed.

Plaintiffs have detailed the start and end times of each of their shifts, and are accordingly entitled to damages for spread-of-hours pay for the days in which their shifts lasted longer than ten hours.  The calculations performed to determine the amount of spread-of-hours pay due to each plaintiff are set forth in Appendix B, and reflect the product of the number of weeks the plaintiff was employed, the number of days per week a plaintiff worked for more than ten hours, and the applicable minimum wage rate.  The specific amounts due each plaintiff are listed below:

| Plaintiff | Spread-of-Hours Pay |
| --- | --- |
| Rodriguez | $3,976.00 |
| Asuncion | $723.11 |
| Bautista | $2,108.75 |
| Grijalva | N/A |
| Cabrera | $652.50 |
| Flores | $2,689.00 |

### D.  Liquidated Damages

Plaintiffs also seek an award of liquidated damages.  Liquidated damages of one hundred percent of the amount of compensatory damages are available under both the FLSA and NYLL. 29 U.S.C. § 216(b); N.Y. Lab. Law § 663(1).  Pursuant to 29 U.S.C. § 260, courts may, in their discretion, decline to award liquidated damages where an employer "shows to the satisfaction of the court" that it acted in good faith and reasonably believed it did not violate the FLSA. Similarly, NYLL permits a court to decline to award liquidated damages if "the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law." N.Y. Lab. Law § 663(1).  However, an employer who defaults fails to make a showing of good faith.  *Rodriguez v. Queens Convenience Deli Corp.*, 2011 WL 4962397, at *4 (E.D.N.Y. Oct. 18, 2011).  I therefore recommend that each plaintiff be awarded an amount in liquidated damages equal to the total amounts for damages due to that plaintiff for unpaid regular and overtime wages and spread-of-hours pay, as listed below:

14

| Plaintiff | Liquidated Damages |
|-----------|--------------------|
| Rodriguez | $115,063.07 |
| Asuncion | $8,699.32 |
| Bautista | $46,410.61 |
| Grijalva | $4,352.68 |
| Cabrera | $10,122.86 |
| Flores | $42,295.43 |

E.  *Wage Notice Violations*

State law requires an employer to provide an employee, at the time of hiring, with a written "notice containing the following information: the rate or rates of pay and basis thereof . . . the regular pay day designated by the employer . . . .  [T]he notice must state the regular hourly rate and overtime rate of pay" in English and in the employee's primary language. N.Y. Lab. Law § 195(1)(a).  Plaintiffs allege that defendants never provided them with the required notice.  Compl. ¶ 192.  Accepting plaintiffs' allegations as admitted in light of defendants' default, plaintiffs have demonstrated defendants' violation of N.Y. Lab. Law § 195(1).

An employee who is not provided with proper notice within ten days of his or her first day of employment may recover damages of $50 for every work day the violations occurred or continued to occur, up to a statutory maximum of $5,000.  N.Y. Lab. Law § 198(1-b).  This effectively means that any employee who did not receive the required notice and subsequently worked for 100 days is entitled to an award of $5,000.  This version of the law took effect on February 27, 2015, and each plaintiff, except Cabrera, worked substantially more than 100 days after the law took effect.  Thus, Rodriguez, Asuncion, Bautista, Grijalva, and Flores are each entitled to the statutory maximum award of $5,000 in damages as a result of defendants' failure to provide them with the notice required pursuant to Labor Law § 195(1)(a).  Cabrera, having

worked only 77 days, is entitled to an award of $3,850.  Accordingly, I recommend plaintiffs be awarded the following amounts for wage notice violations:

| Plaintiff | Wage Notice Violation Award |
|-----------|------------------------------|
| Rodriguez | $5,000 |
| Asuncion | $5,000 |
| Bautista | $5,000 |
| Grijalva | $5,000 |
| Cabrera | $3,850 |
| Flores | $5,000 |

### F.  Wage Statement Violations

Employers must "furnish each employee with a statement with every payment of wages, listing . . . the dates of work covered by that payment[,] the regular hourly rate or rates of pay[, and] the overtime rate or rates of pay."  N.Y. Lab. Law § 195(3).  Plaintiffs allege that they never received wage statements.  Compl. ¶ 195.  Accepting plaintiffs' allegations as true in light of defendants' default, plaintiffs have demonstrated that defendants violated N.Y. Lab. Law § 195(3).

As of February 27, 2015, the NYLL provides that an employee who is not provided with the wage statements required by section 195(3) may recover $250 for each work day that the violation occurs, up to a statutory maximum of $5,000.  N.Y. Lab. Law § 198(1-d).  This effectively means that any employee who did not receive a wage statement and subsequently works for twenty days or more is entitled to an award of $5,000.  As every plaintiff worked well more than twenty days, each is entitled to the statutory maximum award of $5,000 in damages as a result of defendants' failure to provide them with the wage statements required by Labor Law § 195(3).  Accordingly, I recommend plaintiffs be awarded the following amounts for wage statement violations:

16

| Plaintiff | Wage Statement Violation Award |
|-----------|--------------------------------|
| Rodriguez | $5,000 |
| Asuncion | $5,000 |
| Bautista | $5,000 |
| Grijalva | $5,000 |
| Cabrera | $5,000 |
| Flores | $5,000 |

G. *Tools of the Trade*

"If an employee provides 'tools of the trade which will be used in or are specifically required for the performance of the employer's particular work,' then it would be a violation of the FLSA if 'the cost of such tools purchased by the employee cuts into the minimum or overtime wages required to be paid him.'" *Ming Hui v. Shorty's Seafood Corp.*, 2017 WL 5054401, at *9 (E.D.N.Y. Sept. 6, 2017) (quoting 29 C.F.R. § 531.35), *report and recommendation adopted*, 2017 WL 5125527 (E.D.N.Y. Nov. 2, 2017). "Similarly, New York regulations provide that '[t]he minimum wage shall not be reduced by expenses incurred by an employee in carrying out duties assigned by his employer.'" *He v. Home on 8th Corp.*, 2014 WL 3974670, at *9 (S.D.N.Y. Aug. 13, 2014) (quoting 12 N.Y.C.R.R. § 137–2.5(b)).

Rodriguez alleges that he was not reimbursed for purchasing "tools of the trade" having a total cost of $8,301.53, and has submitted receipts for those purchases. Compl. ¶ 57; Rodriguez Decl. at 6-43. Rodriguez's allegations that he incurred unreimbursed expenses on behalf of defendants are deemed admitted in light of defendants' default. For the periods during which Rodriguez was paid a flat rate of $800 per week, I recommend awarding him $20 per regular hour and $30 per overtime hour, which is well above the statutory minimum wage. Nevertheless, courts in this Circuit have found that unreimbursed expenses for tools of the trade are fully recoverable when plaintiff was not fully paid in the first place, regardless of the effective hourly rate that would result were plaintiff to fully recover. *See Hui*, 2017 WL

5054401, at *9 (recommending that plaintiff be awarded damages for unreimbursed tools of the trade expenditures "because Plaintiff was owed unpaid overtime under the FLSA," and therefore "his 'tools of the trade' expenditures further cut into the wage he was owed and to which he was entitled," despite "recommending that Plaintiff be awarded his unpaid compensation at a significantly higher rate than the statutory minimum"); *Ortega v. JR Primos 2 Rest. Corp.*, 2017 WL 2634172, at *3 (S.D.N.Y. June 16, 2017) (finding liability for tools of the trade costs when plaintiff "adequately allege[d] that he was owed unpaid overtime and that the defendants failed to reimburse him for his purchase[s]"); *Wei v. Lingtou Zhengs Corp.*, 2015 WL 739943, at *13 (E.D.N.Y. Feb. 20, 2015) (finding liability for tools of the trade costs as plaintiff was not reimbursed and did not receive overtime pay).

Although Rodriguez earned $20 per regular hour worked, defendants' failure to pay overtime compensation reduced his overall hourly rate to $5.10,[4] which is well below the statutory minimum wage.  Accordingly, I recommend that Rodriguez be awarded $8,301.53 for unreimbursed expenses he incurred acquiring tools of the trade.[5]

## III.   Attorney's Fees and Costs

Plaintiffs prevailing on a claim brought under the FLSA are also entitled to recover "a reasonable attorney's fee to be paid by the defendant, and the costs of the action."  29 U.S.C. § 216(b).  New York Labor Law similarly allows for the recovery of attorney's fees and costs. N.Y. Lab. Law §§ 198, 663(1).

---

[4] $800 paid / (40 regular hours + (78 overtime hours * 1.5)) = $5.10 per hour.
[5] Defendant Flores also alleges he incurred unreimbursed expenses to buy gloves and repair the brakes on a bicycle. Compl. ¶ 137; Flores Decl. ¶ 27.  The amounts expended, though, are not set forth, and from their nature would appear to be *de minimis*.  I therefore recommend that Flores not be awarded any amount for these unreimbursed expenses.

Courts in this Circuit determine a "presumptively reasonable fee" award by multiplying the hours reasonably expended by a reasonable hourly rate. *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*, 522 F.3d 182, 183-84 (2d Cir. 2008). A reasonable rate is determined by considering what a reasonable paying client would be willing to pay, taking into account, among other things, the complexity and difficulty involved in the case and the resources required to prosecute it effectively. *Id.* Generally, courts should determine fee awards by applying rates charged by attorneys employed in the district where the court sits. *Id.*

Plaintiffs were represented by Michael Faillace & Associates, P.C.. Mr. Faillace has submitted billing records, Docket Entry 27-11, and a declaration, Faillace Decl., Docket Entry 28, in support of plaintiffs' request for attorney's fees. Docket Entries 27-11, 28. Plaintiffs have thus satisfied the threshold documentation requirement for attorney's fees in this Circuit. *See Marion S. Mishkin Law Office v. Lopalo*, 767 F.3d 144, 148 (2d Cir. 2014) (citing *N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983)).

### A.   *Reasonable Hourly Rates*

"Courts in the Eastern District of New York award hourly rates ranging from $200 to $450 per hour for partners, $100 to $300 per hour for associates, and $70 to $100 per hour for paralegals." *Hall v. ProSource Techs., LLC*, 2016 WL 1555128, at *12 (E.D.N.Y. Apr. 11, 2016); *see also Konits v. Karahalis*, 409 F. App'x 418, 422 (2d Cir. 2011) ("[P]revailing rates for experienced attorneys [in this District] range from approximately $300-400 per hour." (citation omitted)); *D'Annunzio v. Ayken, Inc.*, 2015 WL 5308094, at *4 (E.D.N.Y. Sept. 10, 2015) ("Courts in the Eastern District of New York award hourly rates ranging from $200 to $450 per hour for partners" and "$100 to $300 per hour for associates . . . ."); *Sass v. MTA Bus Co.*, 6 F. Supp. 3d 238, 261 (E.D.N.Y. 2014) ("Recent opinions issued by courts within the

Eastern District of New York have found reasonable hourly rates to be approximately $300-$450 for partners, $200-$325 for senior associates, and $100-$200 for junior associates.").

Plaintiffs seek $450 per hour for the work of Michael Faillace, the managing member of the firm, who has been practicing law since 1983.  Faillace Decl. ¶ 17.  While the Court notes plaintiffs' description of Mr. Faillace's qualifications as an expert in employment law, Mr. Faillace's proposed rate "is at the upper range of the rates ordinarily awarded to partners in this district, which generally range from $300 to $450 per hour for partners," and "also greatly exceeds the rates recently awarded to Mr. Faillace in the Eastern District of New York." *Martinez v. Alimentos Saludables Corp.*, 2017 WL 5033650, at \*26-27 (E.D.N.Y Sept. 22, 2017) (collecting cases in which Mr. Faillace was recently awarded $300 to $375 per hour, and recommending that Mr. Faillace be awarded $375 per hour).  Accordingly, I recommend that plaintiffs be awarded $375 per hour for the work of Mr. Faillace.

Plaintiffs seek $300 per hour for the work of Marisol Santos, an associate at the firm who graduated from law school in 2013 and has practiced employment law since 2015.  Faillace Decl. ¶ 17.  Ms. Santos has the status of a mid-level associate, for whom an hourly rate of $225 would be more appropriate.  *See Martinez*, 2017 WL 5033650, at \*27 (collecting recent cases in this district and awarding an hourly rate of $225 for the work of a fifth-year associate of Michael Faillace & Associates, P.C.).  Accordingly, I recommend that plaintiffs be awarded $225 per hour for the work of Ms. Santos.

Plaintiffs seek $250 for the work of Haleigh Amant, "a law school graduate, who is awaiting admission to the bar."  Docket Entry 28 at 6, n.1.  Ms. Amant therefore has the status of a law clerk.  Courts in this district have typically found $125 to be a reasonable hourly rate for law clerks not admitted to the bar.  *See, e.g.*, *Restivo v. Nassau County*, 2017 WL 3727366, at \*9 (E.D.N.Y. Aug. 28, 2017) (finding an hourly rate of $125 reasonable for a law clerk); *D'Annunzio v.*

20

*Ayken, Inc.*, 2015 WL 5308094, at *5 (E.D.N.Y. Sept. 10, 2015) (finding $125 a reasonable rate for a law clerk who was "a law school graduate throughout the duration of this action, and performed tasks similar to an associate"); *Gomez v. El Rancho de Andres Carne de Tres Inc.*, 2014 WL 1310296, at *12 (E.D.N.Y. Mar. 11, 2014) (same), *report and recommendation adopted*, 2014 WL 1310299 (E.D.N.Y. Mar. 31, 2014).  Accordingly, I recommend that plaintiffs be awarded $125 per hour for the work of Ms. Amant.

Plaintiffs seek $100 for the work of paralegals, but have not provided any details about the qualifications or experience of the paralegals involved.  In this district, that rate is "slightly higher than is typically awarded for paralegal work," particularly where "plaintiff provides no information regarding the training and background of the assistant[s]."  *Gomez*, 2014 WL 1310296, at *12.  The prevailing rate in this district for paralegal work in cases brought under the FLSA and NYLL resulting in a default judgment is $75 per hour.  *See Fermin*, 93 F. Supp. 3d at 52; *Hernandez v. Prof'l Maint. & Cleaning Contractors Inc.*, 2015 WL 128020, at *8 (E.D.N.Y. Jan. 8, 2015); *Castellanos v. Deli Casagrande Corp.*, 2013 WL 1207058, at *10 (E.D.N.Y. Mar. 7, 2013), *report and recommendation adopted*, 2013 WL 1209311 (E.D.N.Y. Mar. 25, 2013); *Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 95 (E.D.N.Y. 2012).  Accordingly, I recommend that plaintiffs be awarded $75 per hour for the work of paralegals.

### B.  *Reasonable Number of Hours*

Next, I turn to whether the hours expended by counsel were reasonable.  If "some of the time was not reasonably necessary . . . [the court] should reduce the time for which compensation is awarded accordingly."  *Louis Vuitton Malletier, S.A. v. LY USA, Inc.*, 676 F.3d 83, 111 (2d Cir. 2012).

In similar wage-and-hour cases where a motion for default judgment immediately followed the filing of a complaint, "the high-end amount of hours spent on cases . . . is no more

than 55 hours total." *Angamarca v. Pita Grill 7 Inc.*, 2012 WL 3578781, at *13 (S.D.N.Y. Aug. 2, 2012), *report and recommendation adopted*, Order dated Dec. 14, 2012, Docket Entry 39, *Angamarca v. Pita Grill 7 Inc.*, No. 11-CV-7777 (S.D.N.Y. Dec. 14, 2012).

This case involves six defendants who initially answered but later failed to defend, as well as an unsuccessful attempt at mediation. The total number of hours claimed, though—39.6—falls well below the high end claimed in simpler cases. Moreover, plaintiffs have provided a billing record describing the tasks completed and the hours expended for each task. Docket Entry 27-11. I have reviewed this record and find the hours expended to be reasonable. Accordingly, I recommend that the following amount be awarded in fees:

| Name | Hourly Rate | Hours Billed | Sub-Total |
|------|------------:|-------------:|----------:|
| Michael Faillace | $375.00 | 15 | $5,625.00 |
| Marisol Santos | $225.00 | 9.5 | $2,137.00 |
| Haleigh Amant | $125.00 | 9.3 | $1,162.50 |
| Paralegals | $75.00 | 5.8 | $435.00 |
| | | **Total:** | **$9,359.50** |

### C. Costs

Plaintiffs seek to recover costs of $400 for the filing fee, $65 for a process server for service on Solares, and $50 for a process server for service on Moronta, for a total of $515. Docket Entry 27-11. I find these amounts to be reasonable and I therefore recommend awarding plaintiffs $515 in costs.

## IV. Interest

### A. Prejudgment Interest

Prejudgment interest at a rate of nine percent per annum is mandatory with respect to certain causes of action brought under New York Law. N.Y. C.P.L.R. §§ 5001(a), 5004; *see also Gussack Realty Co. v. Xerox Corp.*, 224 F.3d 85, 93 (2d Cir. 2000) ("[S]ection 5001 imposes an

affirmative mandate on trial courts; they have no discretion not to award prejudgment interest under New York law.").

Although "prejudgment interest may not be awarded in addition to liquidated damages for violations of the FLSA," *Santillan v. Henao*, 822 F. Supp. 2d 284, 298 (E.D.N.Y. 2011), "prevailing plaintiffs may recover both [liquidated damages and prejudgment interest] for claims brought under the NYLL." *Piedra v. Ecua Rest. Inc.*, 2018 WL 1136039, at *16 (E.D.N.Y. Jan. 31, 2018), *report and recommendation adopted*, 2018 WL 1135652 (E.D.N.Y. Feb. 28, 2018). However, "prejudgment interest accrues [only] on any damages for which liquidated damages are not awarded under the FLSA; pre-judgment interest may not be awarded under the NYLL in addition to liquidated damages for violations of the FLSA." *Id.*; *see also Demirovic v. Ortega*, 2018 WL 1935981, at *7 (E.D.N.Y. Apr. 24, 2018). Here, plaintiffs' claims for unpaid regular and overtime wages are brought under the FLSA as well as NYLL, and I recommend an award of liquidated damages under the FLSA. Accordingly, plaintiffs are not entitled to recover prejudgment interest on unpaid regular and overtime wages.

Plaintiffs are also not entitled to prejudgment interest on awards of statutory damages under the New York Labor Law. *See Demirovic*, 2018 WL 1935981, at *7. Thus, each plaintiff is entitled to recover prejudgment interest only on compensatory damage amounts awarded exclusively under the NYLL; in this case, those amounts include only plaintiffs' claims for spread-of-hours pay. *See Piedra*, 2018 WL 1136039, at *16.

When a claim accrues over a period of time, interest may be calculated using a "single reasonable intermediate date." N.Y. C.P.L.R. § 5001(b); *Santillan*, 822 F. Supp. 2d at 298. I recommend that the midpoint date of each plaintiffs' employment, listed below, be used as the "single reasonable intermediate date" in the calculation of prejudgment interest. I also

recommend that the Clerk of Court compute the interest on the amounts below as accruing from

the dates listed below to the date judgment is entered, at the statutorily prescribed rate of nine

percent per annum.

| Plaintiff | Entitled to Prejudgment Interest on: | Prejudgment Interest Accrues from: |
|-----------|--------------------------------------|------------------------------------|
| Rodriguez | $3,976.00 | September 16, 2015 |
| Asuncion | $723.11 | January 15, 2016 |
| Bautista | $2,108.75 | May 2, 2015 |
| Grijalva | N/A | February 14, 2016 |
| Cabrera | $652.50 | October 15, 2015 |
| Flores | $2,689.00 | December 31, 2015 |

### B. Post-Judgment Interest

Plaintiffs also contend that the total amount of the judgment should be increased by

fifteen percent if any amounts remain unpaid ninety days after the judgment is entered.  The

NYLL indeed requires that

> [a]ny judgment or court order awarding remedies under this section shall provide
> that if any amounts remain unpaid upon the expiration of ninety days following
> issuance of judgment, or ninety days after expiration of the time to appeal and no
> appeal is then pending, whichever is later, the total amount of judgment shall
> automatically increase by fifteen percent.

N.Y. Lab. Law § 198(4).  While "[t]he automatic-increase language directly follows language

about the right to collect attorney's fees and costs incurred in enforcing any court judgment,"

many decisions in this Circuit have interpreted this provision to apply to the total amount of the

judgment.  *Gonzalez-Diaz v. Daddyo's Mgmt. Grp. Inc.*, 2017 WL 7625319, at *4 (E.D.N.Y.

Nov. 7, 2017) (collecting cases, analyzing the legislative history of the provision, and concluding

that the language refers to "the entire outstanding judgment, and not simply to the attorney's fees

judgment"), *report and recommendation adopted*, Order dated Dec. 12, 2017, *Gonzalez-Diaz v.

Daddyo's Mgmt. Grp. Inc.*, No. 16-CV-1907 (E.D.N.Y. Dec. 12, 2017).

24

The only amounts I recommend be awarded exclusively under the NYLL are for spread-of-hours pay, wage notice violations, and wage statement violations.  Applying the holdings in *Demirovic* and *Piedra* with respect to prejudgment interest, I therefore recommend that if any of these amounts remain unpaid ninety days after judgment is entered, and if no appeal is then pending, the amount of judgment based upon spread-of-hours pay, wage notice violations, and wage statement violations, automatically be increased by fifteen percent pursuant to NYLL § 198(4).

Finally, 28 U.S.C. § 1961(a) provides that an award of post-judgment interest is mandatory on "any money judgment in a civil case recovered in a district court."  The statute further provides that interest must be calculated at a rate "equal to the weekly average 1 year constant maturity Treasury yield . . . for the calendar week preceding the date of the judgment." *Id.*  I therefore respectfully recommend that plaintiff be awarded post-judgment interest at the federal statutorily authorized rate from the date judgment is entered until the judgment is paid.

CONCLUSION

For the reasons stated above, I respectfully recommend that the Court grant the plaintiffs' motion for default judgment and enter judgment in favor of plaintiffs and against defendants, jointly and severally, for unpaid regular and overtime wages, spread-of-hours pay, liquidated damages, statutory damages, and unreimbursed expenses incurred obtaining tools of the trade.  I further recommend that the judgment include an award of attorney's fees, costs, and pre- and post-judgment interest as applicable.

Specifically, I recommend that:

a.  plaintiffs be awarded damages in the following amounts;

| Plaintiff | Wages & Overtime | Spread of Hours | Liquidated Damages | Wage Notice | Wage Statement | Tools of Trade | Total Damages |
|-----------|------------------|-----------------|--------------------|-------------|----------------|----------------|---------------|
| Rodriguez | $111,087.07 | $3,976.00 | $115,063.07 | $5,000 | $5,000 | $8,301.53 | **$248,427.67** |
| Asuncion | $7,976.21 | $723.11 | $8,699.32 | $5,000 | $5,000 | N/A | **$27,398.64** |
| Bautista | $44,301.86 | $2,108.75 | $46,410.61 | $5,000 | $5,000 | N/A | **$102,821.22** |
| Grijalva | $4,352.68 | N/A | $4,352.68 | $5,000 | $5,000 | N/A | **$18,705.36** |
| Cabrera | $9,470.36 | $652.50 | $10,122.86 | $3,850 | $5,000 | N/A | **$29,095.72** |
| Flores | $39,606.43 | $2,689.00 | $42,295.43 | $5,000 | $5,000 | N/A | **$94,590.86** |

b.  plaintiffs be awarded prejudgment interest at nine percent per annum on the amounts

listed below, as calculated by the Clerk of Court from the dates listed below to the

date judgment is entered;

| Plaintiff | Entitled to Prejudgment Interest on: | Prejudgment Interest Accrues from: |
|-----------|--------------------------------------|------------------------------------|
| Rodriguez | $3,976.00 | September 16, 2015 |
| Asuncion | $723.11 | January 15, 2016 |
| Bautista | $2,108.75 | May 2, 2015 |
| Grijalva | $N/A | February 14, 2016 |
| Cabrera | $652.50 | October 15, 2015 |
| Flores | $2,689.00 | December 31, 2015 |

c.  plaintiffs be awarded $9,359.50 in attorney's fees and $515.00 in costs;

d.  the Court's judgment provide that, if any amounts awarded under the NYLL for

spread-of-hours pay, wage notice violations, and wage statement violations remain

unpaid upon the expiration of ninety days following the entry of judgment, or ninety

days after expiration of the time to appeal and no appeal is then pending, whichever is

later, those amounts shall automatically increase by fifteen percent, as provided by

NYLL § 198(4); and

e.  plaintiffs be awarded post-judgment interest at the federal statutorily authorized rate

from the date judgment is entered until the date the judgment is paid.

26

Any objections to the recommendations made in this Report must be made within fourteen days after filing of this Report and Recommendation and, in any event, on or before August 28, 2018. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2).  Failure to file timely objections may waive the right to appeal the District Court's order.  *See Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).

_____/s/_____<br>
STEVEN M. GOLD<br>
United States Magistrate Judge

Brooklyn, New York<br>
August 14, 2018

*U:\#DJM 2017-2018\zMisc. Documents\Rodriguez v. Solares Corp., Default Judgment - FINAL.docx*

**Appendix A: Unpaid Wages and Overtime Calculations**

## Sixto Rodriguez

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **Total Wages Earned** | | | | | | | |
| Start | End | Weeks | Hours per Week | Regular Hourly Wages Due | Hourly Overtime Wages Due | Total Regular Wages Earned ((40 Hours * Regular Rate) * Weeks Worked) | Total Overtime Earned ((Hours above 40 * Overtime Rate) * Weeks Worked) |
| 2/1/2015 | 3/31/2015 | 8.29 | 118.00 | $20.00 | $30.00 | $6,632.00 | $19,388.57 |
| 4/1/2015 | 12/31/2015 | 39.14 | 118.00 | $8.75 | $13.13 | $13,699.00 | $40,072.50 |
| 1/1/2016 | 1/15/2016 | 2.00 | 118.00 | $9.00 | $13.50 | $720.00 | $2,106.00 |
| 1/16/2016 | 4/30/2016 | 15.00 | 118.00 | $20.00 | $30.00 | $12,000.00 | $35,100.00 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **Total Wages Paid** | | | | | | | |
| Start | End | Weeks | Hours per Week | Hourly Wages Actually Paid | Hourly Overtime Actually Paid | Total Regular Wages Paid ((40 Hours * Actual Rate) * Weeks Worked) | Total Overtime Paid ((Hours Over 40 *Actual Overtime Rate) * Weeks Worked) |
| 2/1/2015 | 3/31/2015 | 8.29 | 118.00 | $20.00 | $0.00 | $6,632.00 | $0.00 |
| 4/1/2015 | 12/31/2015 | 39.14 | 118.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 1/1/2016 | 1/15/2016 | 2.00 | 118.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 1/16/2016 | 4/30/2016 | 15.00 | 118.00 | $20.00 | $0.00 | $12,000.00 | $0.00 |

| | | | | | |
|---|---|---|---|---|---|
| **Total Wages Owed** | | | | | |
| Total Regular Wages Earned | Total Regular Wages Paid | Total Overtime Earned | Total Overtime Paid | Total Unpaid Regular Wages Owed (Total Wages Earned - Total Wages Paid) | Total Unpaid Overtime Owed (Total Overtime Earned - Total Overtime Paid) |
| $6,632.00 | $6,632.00 | $19,388.57 | $0.00 | $0.00 | $19,388.57 |
| $13,700.00 | $0.00 | $40,072.50 | $0.00 | $13,700.00 | $40,072.50 |
| $720.00 | $0.00 | $2,106.00 | $0.00 | $720.00 | $2,106.00 |
| $12,000.00 | $12,000.00 | $35,100.00 | $0.00 | $0.00 | $35,100.00 |

|  |  |  |
|---|---:|---:|
| **Subtotals:** | **$14,420.00** | **$96,667.07** |
| **Total Unpaid Wages and Overtime:** | | **$111,087.07** |

## Francisco Asuncion Andrade

| Total Wages Earned | | | | | | | |
|---|---|---|---|---|---|---|---|
| Start | End | Weeks | Hours per Week | Regular Hourly Wages Due | Hourly Overtime Wages Due | Total Regular Wages Earned ((40 Hours * Regular Rate) * Weeks Worked) | Total Overtime Earned ((Hours above 40 * Overtime Rate) * Weeks Worked) |
| 10/1/2015 | 12/31/2015 | 13.00 | 44.00 | $8.75 | $13.13 | $4,550.00 | $682.50 |
| 1/1/2016 | 2/29/2016 | 8.43 | 44.00 | $9.00 | $13.50 | $3,034.29 | $455.14 |
| 3/1/2016 | 4/30/2016 | 8.57 | 22.00 | $9.00 | $13.50 | $1,697.14 | $0.00 |

| Total Wages Paid | | | | | | | |
|---|---|---|---|---|---|---|---|
| Start | End | Weeks | Hours per Week | Hourly Wages Actually Paid | Hourly Overtime Actually Paid | Total Regular Wages Paid ((40 Hours * Actual Rate) * Weeks Worked) | Total Overtime Paid ((Hours Over 40 *Actual Overtime Rate) * Weeks Worked) |
| 10/1/2015 | 12/31/2015 | 13.00 | 44.00 | $2.25 | $0.00 | $1,170.00 | $0.00 |
| 1/1/2016 | 2/29/2016 | 8.43 | 44.00 | $2.25 | $0.00 | $758.57 | $0.00 |
| 3/1/2016 | 4/30/2016 | 8.57 | 22.00 | $1.50 | $0.00 | $514.29 | $0.00 |

| Total Wages Owed | | | | | |
|---|---|---|---|---|---|
| Total Regular Wages Earned | Total Regular Wages Paid | Total Overtime Earned | Total Overtime Paid | Total Unpaid Regular Wages Owed (Total Wages Earned - Total Wages Paid) | Total Unpaid Overtime Owed (Total Overtime Earned - Total Overtime Paid) |
| $4,550.00 | $1,170.00 | $682.50 | $0.00 | $3,380.00 | $682.50 |
| $3,034.29 | $758.57 | $455.14 | $0.00 | $2,275.71 | $455.14 |
| $1,697.14 | $514.29 | $0.00 | $0.00 | $1,182.86 | $0.00 |

| | |
|---|---|
| **Subtotals:** | **$6,838.57** | **$1,137.64** |
| **Total Unpaid Wages and Overtime:** | **$7,976.21** |

## Santos Bautista

| Total Wages Earned | | | | | | | |
|---|---|---|---|---|---|---|---|
| Start | End | Weeks | Hours per Week | Regular Hourly Wages Due | Hourly Overtime Wages Due | Total Regular Wages Earned ((40 Hours * Regular Rate) * Weeks Worked) | Total Overtime Earned ((Hours above 40 * Overtime Rate) * Weeks Worked) |
| 1/1/2015 | 8/9/2015 | 31.43 | 108.80 | $12.50 | $18.75 | $15,714.29 | $40,542.86 |
| 8/10/2015 | 8/31/2015 | 3.00 | 108.80 | $8.75 | $13.13 | $1,050.00 | $2,709.00 |

| Total Wages Paid | | | | | | | |
|---|---|---|---|---|---|---|---|
| Start | End | Weeks | Hours per Week | Hourly Wages Actually Paid | Hourly Overtime Actually Paid | Total Regular Wages Paid ((40 Hours * Actual Rate) * Weeks Worked) | Total Overtime Paid ((Hours Over 40 *Actual Overtime Rate) * Weeks Worked) |
| 1/1/2015 | 8/9/2015 | 31.43 | 108.80 | $12.50 | $0.00 | $15,714.29 | $0.00 |
| 8/10/2015 | 8/31/2015 | 3.00 | 108.80 | $0.00 | $0.00 | $0.00 | $0.00 |

| Total Wages Owed | | | | | |
|---|---|---|---|---|---|
| Total Regular Wages Earned | Total Regular Wages Paid | Total Overtime Earned | Total Overtime Paid | Total Unpaid Regular Wages Owed (Total Wages Earned - Total Wages Paid) | Total Unpaid Overtime Owed (Total Overtime Earned - Total Overtime Paid) |
| $15,714.29 | $15,714.29 | $40,542.86 | $0.00 | $0.00 | $40,542.86 |
| $1,050.00 | $0.00 | $2,709.00 | $0.00 | $1,050.00 | $2,709.00 |

| | | |
|---|---|---|
| **Subtotals:** | **$1,050.00** | **$43,251.86** |
| **Total Unpaid Wages and Overtime:** | | **$44,301.86** |

## Rodrigo Grijalva Ascencion

| Total Wages Earned | | | | | | | |
|---|---|---|---|---|---|---|---|
| Start | End | Weeks | Hours per Week | Regular Hourly Wages Due | Hourly Overtime Wages Due | Total Regular Wages Earned ((32.5 Hours * Regular Rate) * Weeks Worked) | Total Overtime Earned ((Hours above 40 * Overtime Rate) * Weeks Worked) |
| 12/1/2015 | 12/31/2015 | 4.29 | 32.50 | $8.75 | $13.13 | $1,218.75 | $0.00 |
| 1/1/2016 | 4/23/2016 | 16.14 | 32.50 | $9.00 | $13.50 | $4,721.79 | $0.00 |
| 4/24/2016 | 4/30/2016 | 0.86 | 32.50 | $9.00 | $13.50 | $250.71 | $0.00 |

| Total Wages Paid | | | | | | | |
|---|---|---|---|---|---|---|---|
| Start | End | Weeks | Hours per Week | Hourly Wages Actually Paid | Hourly Overtime Actually Paid | Total Regular Wages Paid ((40 Hours * Actual Rate) * Weeks Worked) | Total Overtime Paid ((Hours Over 40 *Actual Overtime Rate) * Weeks Worked) |
| 12/1/2015 | 12/31/2015 | 4.29 | 32.50 | $2.25 | $0.00 | $385.71 | $0.00 |
| 1/1/2016 | 4/23/2016 | 16.14 | 32.50 | $2.25 | $0.00 | $1,452.86 | $0.00 |
| 4/24/2016 | 4/30/2016 | 0.86 | 32.50 | $0.00 | $0.00 | $0.00 | $0.00 |

| Total Wages Owed | | | | | |
|---|---|---|---|---|---|
| Total Regular Wages Earned | Total Regular Wages Paid | Total Overtime Earned | Total Overtime Paid | Total Unpaid Regular Wages Owed (Total Wages Earned - Total Wages Paid) | Total Unpaid Overtime Owed (Total Overtime Earned - Total Overtime Paid) |
| $1,218.75 | $385.71 | $0.00 | $0.00 | $833.04 | $0.00 |
| $4,721.79 | $1,452.86 | $0.00 | $0.00 | $3,268.93 | $0.00 |
| $250.71 | $0.00 | $0.00 | $0.00 | $250.71 | $0.00 |

| | | |
|---|---|---|
| Subtotals: | $4,352.68 | $0.00 |
| Total Unpaid Wages and Overtime: | | $4,352.68 |

## Jaquelin Cabrera Romero

| Total Wages Earned | | | | | | | |
|---|---|---|---|---|---|---|---|
| Start | End | Weeks | Hours per Week | Regular Hourly Wages Due | Hourly Overtime Wages Due | Total Regular Wages Earned ((32.5 Hours * Regular Rate) * Weeks Worked) | Total Overtime Earned ((Hours above 40 * Overtime Rate) * Weeks Worked) |
| 9/1/2015 | 11/20/2015 | 11.43 | 84.00 | $8.75 | $13.13 | $4,000.00 | $6,599.78 |
| 11/21/2015 | 11/28/2015 | 1.00 | 84.00 | $8.75 | $13.13 | $350.00 | $577.72 |

| Total Wages Paid | | | | | | | |
|---|---|---|---|---|---|---|---|
| Start | End | Weeks | Hours per Week | Hourly Wages Actually Paid | Hourly Overtime Actually Paid | Total Regular Wages Paid ((40 Hours * Actual Rate) * Weeks Worked) | Total Overtime Paid ((Hours Over 40 *Actual Overtime Rate) * Weeks Worked) |
| 9/1/2015 | 11/20/2015 | 11.43 | 84.00 | $4.50 | $0.00 | $2,057.14 | $0.00 |
| 11/21/2015 | 11/28/2015 | 1.00 | 84.00 | $0.00 | $0.00 | $0.00 | $0.00 |

| Total Wages Owed | | | | | |
|---|---|---|---|---|---|
| Total Regular Wages Earned | Total Regular Wages Paid | Total Overtime Earned | Total Overtime Paid | Total Unpaid Regular Wages Owed (Total Wages Earned - Total Wages Paid) | Total Unpaid Overtime Owed (Total Overtime Earned - Total Overtime Paid) |
| $4,000.00 | $2,057.14 | $6,599.78 | $0.00 | $1,942.86 | $6,599.78 |
| $350.00 | $0.00 | $577.72 | $0.00 | $350.00 | $577.72 |

|  | | |
|---|---|---|
| **Subtotals:** | **$2,292.86** | **$7,177.50** |
| **Total Unpaid Wages and Overtime:** | | **$9,470.36** |

**Wilson Flores**

| | | | | | | | Total Wages Earned | |
|---|---|---|---|---|---|---|---|---|
| Start | End | Weeks | Hours per Week | Regular Hourly Wages Due | Hourly Overtime Wages Due | Total Regular Wages Earned ((32.5 Hours * Regular Rate) * Weeks Worked) | Total Overtime Earned ((Hours above 40 * Overtime Rate) * Weeks Worked) | |
| 8/1/2015 | 12/31/2015 | 21.71 | 101.00 | $10.00 | $15.00 | $8,685.71 | $19,868.57 | |
| 1/1/2016 | 5/31/2016 | 21.57 | 101.00 | $10.00 | $15.00 | $8,628.57 | $19,737.86 | |

| | | | | | | Total Wages Paid | |
|---|---|---|---|---|---|---|---|
| Start | End | Weeks | Hours per Week | Hourly Wages Actually Paid | Hourly Overtime Actually Paid | Total Regular Wages Paid ((40 Hours * Actual Rate) * Weeks Worked) | Total Overtime Paid ((Hours Over 40 *Actual Overtime Rate) * Weeks Worked) |
| 8/1/2015 | 12/31/2015 | 21.71 | 101.00 | $10.00 | $0.00 | $8,685.71 | $0.00 |
| 1/1/2016 | 5/31/2016 | 21.57 | 101.00 | $10.00 | $0.00 | $8,628.57 | $0.00 |

| | | | | Total Wages Owed | |
|---|---|---|---|---|---|
| Total Regular Wages Earned | Total Regular Wages Paid | Total Overtime Earned | Total Overtime Paid | Total Unpaid Regular Wages Owed (Total Wages Earned - Total Wages Paid) | Total Unpaid Overtime Owed (Total Overtime Earned - Total Overtime Paid) |
| $8,685.71 | $8,685.71 | $19,868.57 | $0.00 | $0.00 | $19,868.57 |
| $8,628.57 | $8,628.57 | $19,737.86 | $0.00 | $0.00 | $19,737.86 |

|  | | |
|---|---|---|
| Subtotals: | $0.00 | $39,606.43 |
| Total Unpaid Wages and Overtime: | | $39,606.43 |

**Appendix B: Plaintiffs' Spread-of-Hours Pay**

| Plaintiff | Start Date | End Date | Weeks Worked | Days Per Week in Which Plaintiff Worked More than Ten Hours | Applicable Minimum Wage Rate | Spread-of-Hours Pay (Weeks Worked * Days Per Week * Applicable Minimum Wage) |
|---|---|---|---|---|---|---|
| **Rodriguez** | 2/1/2015 | 12/31/2015 | 47.43 | 7 | $8.75 | $2,905.00 |
| | 1/1/2016 | 4/30/2016 | 17.00 | 7 | $9.00 | $1,071.00 |
| | | | | | **Total:** | **$3,976.00** |
| **Asuncion** | 10/1/2015 | 12/31/2015 | 13.00 | 3 | $8.75 | $341.25 |
| | 1/1/2016 | 2/29/2016 | 8.43 | 3 | $9.00 | $227.57 |
| | 3/1/2016 | 4/30/2016 | 8.57 | 2 | $9.00 | $154.29 |
| | | | | | **Total:** | **$723.11** |
| **Bautista** | 1/1/2015 | 8/31/2015 | 34.43 | 7 | $8.75 | $2,108.75 |
| | | | | | **Total:** | **$2,108.75** |
| **Cabrera** | 9/1/2015 | 11/28/2015 | 12.43 | 6 | $8.75 | $652.50 |
| | | | | | **Total:** | **$652.50** |
| **Flores** | 8/1/2015 | 12/31/2015 | 21.71 | 7 | $8.75 | $1,330.00 |
| | 1/1/2016 | 5/31/2016 | 21.57 | 7 | $9.00 | $1,359.00 |
| | | | | | **Total:** | **$2,689.00** |